PAUL J. LEEDS, ESQ. (SBN 214309)
pleeds@fsl.law
MEREDITH KING, ESQ. (SBN 280043)
mking@fsl.law
FRANKLIN SOTO LEEDS LLP
444 West C Street, Suite 300
San Diego, California 92101
Tel: 619.872.2520
Fax: 619.566.0221

*Attorneys for River Falls, LLC,*
*Private Mortgage Lending, Inc., and*
*The Armbrust Living Trust*

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re,<br><br>MONIKA KERBER PEREZ,<br><br>          Debtor. | Case No: 25-04318-CL7<br><br>CHAPTER 7<br><br>**DECLARATION OF MEREDITH KING IN SUPPORT OF *EX PARTE* APPLICATION FOR EXTENSION OF TIME TO OBJECT TO DISCHARGE** |

I, Meredith King, declare as follows:

      1.    I am an attorney duly licensed to practice law before all courts in the State of California. I am an attorney at the law firm of FRANKLIN SOTO LEEDS LLP, attorneys of record for Secured Creditors River Falls, LLC, Private Mortgage Lending, Inc., and The Armbrust Living Trust (collectively "Secured Creditors") in the above-captioned proceeding.

      2.    This declaration is based on my own personal knowledge and, to the extent it is not, it is based on my familiarity with FSL's business records in the course of my employment. FSL's business records are routinely made to record acts, events, and

1  conditions relating to FSL's business operations by those with firsthand knowledge and

2  contemporaneous to the information recorded. If called upon as a witness I could, and

3  would, testify competently to the contents of this declaration.

4      3.    I attended the creditors' meeting ("First Creditors' Meeting") held on

5  November 19, 2025, in connection with the Chapter 11 case pending before the United

6  States Bankruptcy Court for the Southern District of California as Case No. 25-bk-

7  04245-JBM11 ("Villa Chardonnay Bankruptcy"). Villa Chardonnay Horses with Wings,

8  Inc. ("Villa Chardonnay") appeared at the meeting by and through its representative—

9  the individual Chapter 7 debtor in the above captioned bankruptcy, Monika Kerber

10  Perez.

11      4.    Attached hereto as **Exhibit 1** is a true and correct copy of relevant excerpts

12  of the transcript of the Villa Chardonnay First 341 Meeting.

13      5.    At Villa Chardonnay's First Creditors' Meeting, in response to questioning

14  from me, Ms. Perez advised that debts owed to Secured Creditors were identified as

15  disputed on the advice of Villa Chardonnay's attorney. *See* Transcript, **Exhibit 1**, pg.

16  84, l. 22-pg. 85, l.15. Mr. Micheal Totaro, counsel appearing on behalf of Villa

17  Chardonnay, later clarified on the record, "there's no dispute as to the money that's owed

18  to your client." *Id.* at pg. 85, ll. 7-9.

19      6.    Villa Chardonnay's initial 341(a) was continued to December 11, 2025. *See*

20  Transcript, **Exhibit 1**, pg. 91, ll. 22-pg. 85, l.15 and pg. 95, ll. 7-21.

21      7.    On December 8, 2025, I received an email from Ms. Haeji Hong with the

22  Office of the United States Trustee notifying me that Villa Chardonnay's December 11,

23  2025, meeting of creditors had been continued to January 6, 2026, "due to unforeseen

24  personal reasons." A true and correct copy of the email I received from Ms. Hong is

25  attached hereto as **Exhibit 2.**

26      8.    On December 9, 2025, I responded to Ms. Hong's email and advised that

27  my clients were respectfully objecting to the continuance of the 341(a) meeting,

28

1   including because of several outstanding compliance issues that required prompt
2   attention and appeared to place Secured Creditors' collateral at risk.

3       9.    On or around November 13, 2025, I received a call from Mr. Totaro asking
4   whether Secured Creditors were interested in selling their note. The next day, I emailed
5   Mr. Totaro and requested additional details regarding the proposed purchase. Attached
6   hereto as hereto as **Exhibit 3** is a true and correct copy of that email.

7       10.    Between November 13 and approximately December 15, I exchanged
8   several emails and had a number of discussions with Mr. Totaro regarding the potential
9   purchase of Secured Creditors' note.

10      11.    On December 8, 2025, I received an email from Mr. Totaro advising that the
11  owner of the entity of the party interested in purchasing Secured Creditors' note would
12  not be disclosed "under any circumstances" and that funds would be paid from
13  Mr. Totaro's account. Attached hereto as **Exhibit 4** is a true and correct copy of the
14  email I received from Mr. Totaro on December 8, 2025.

15      12.    After a status conference held in connection with the Villa Chardonnay
16  Bankruptcy on December 11, 2025, I met with Mr. Totaro to discuss the potential
17  purchase of Secured Creditors' note. During that conversation, Mr. Totaro advised that to
18  the extent Secured Creditors' note was not sold, he anticipated Villa Chardonnay
19  objecting to its enforcement in the Villa Chardonnay Bankruptcy including because it
20  was an individual liability of Ms. Perez subject to discharge in her individual bankruptcy.
21  At that time, Mr. Totaro advised he was in the process of obtaining an expert opinion
22  from a Mr. Doss who he expected to opine on deficiencies in the loan documents.

23      13.    On December 12, 2025, I emailed Mr. Totaro and requested additional
24  information on Villa Chardonnay's position that the loan was an individual liability of
25  Ms. Perez. Attached hereto as **Exhibit 5** is a true and correct copy of the email I sent to
26  Mr. Totaro.

27      14.    On December 13, 2025, in response to my inquiry about alleged
28  deficiencies in Secured Creditors' note, Mr. Totaro emailed my office and stated:

1  "Unless I have the wrong note, please explain how a note signed by Monika individually
2  entitles you to put a lien on a separate entity that owns the property." A true and correct
3  copy of the email my office received from Mr. Totaro is attached hereto as **Exhibit 6**.

4      15.    My office responded on December 15, 2025, and again requested
5  information and documents which would support any position that Secured Creditors'
6  note is an individual liability of Ms. Perez. *See* **Exhibit 6.** To date, my office has not
7  received a response.

8      16.    On December 15, 2025, I received an email from Mr. Totaro clarifying that
9  he had no relationship with the proposed buyer of Secured Creditors' note and would get
10  back to our office at a later time regarding the potential purchase. As of the date of this
11  declaration, my office has had no further discussions with Mr. Totaro on this topic.

12      17.    I attended the continued creditors' meeting ("Second Creditors' Meeting")
13  held in Villa Chardonnay's Bankruptcy on January 7, 2026. Villa Chardonnay again
14  appeared at the meeting by and through its representative, Ms. Perez.

15      18.    At Villa Chardonnay's Second Creditors' Meeting, Ms. Perez again testified
16  that she did not dispute any amounts Villa Chardonnay owed to Secured Creditors.
17  Mr. Totaro instead clarified on the record that amounts owed to Secured Creditors' were
18  identified as disputed on Villa Chardonnay's schedules because Villa Chardonnay was
19  unsure of the exact amount owed on the petition date. Neither Mr. Totaro nor Ms. Perez,
20  provided any additional information on any potential objection to Secured Creditors'
21  claim asserted in Villa Chardonnay's Bankruptcy.

22      19.    At Villa Chardonnay's Second 341 Meeting, Ms. Perez also provided
23  testimony indicating:

24          a.    She potentially held an interest in a trust set up for her benefit by her
25              father.

26          b.    Villa Chardonnay reported the payment of a substantial amount of
27              wages on in its 2024 tax return. Ms. Perez testified that this was
                amounts paid to 1099 workers. However, it remains unclear why
28              these would be reported as wages on Villa Chardonnay's return.

c.     Ms. Perez received cash donations each month which were used to both cover her personal expenses and pay the operating expenses of Villa Chardonnay.

20.     Villa Chardonnay's 341(a) meeting was concluded on January 7, 2026, however, it was noted on the record that several document requests remained outstanding including, among others, banking and financial records.

21.     On December 12, 2025, Dylan Noceda from my office emailed Mr. Totaro and requested copies of Villa Chardonnay's bank records. A true and correct copy of Mr. Noceda's email is attached hereto as **Exhibit 7**.

22.     On December 13, 2025, Mr. Totaro provided my office copies of bank statements for the Torrey Pines Bank account ending 8690 for the period January-December 2023. Mr. Totaro also provided statements for the Chase account ending in 9030 for the period January 2024-October 2024. No bank statements were provided for 2025. Villa Chardonnay's amended Sch. A/B filed on November 22, 2025 (Villa Chardonnay Bankruptcy, Doc 37, pg. 4) also identifies a Wells Fargo checking account ending in 9030, and it is unclear whether this is the same as the Chase account ending in 9030 for which 2024 statements were provided.

23.     On January 7, 2026, I emailed Mr. Totaro and requested copies of Villa Chardonnay's corporate books and records. A true and correct copy of this email is attached hereto as **Exhibit 8**. To date, my office has not received a response.

24.     I now believe Rule 2004 examinations to Villa Chardonnay and third parties, including Villa Chardonnay's financial institutions and insurance agents, may be necessary to fully investigate Mr. Perez and Villa Chardonnay's financial affairs.

25.     I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct. Executed on January 14, 2026, at San Diego, California.

*/s/ Meredith King*
Meredith King

# EXHIBIT "1"

Audio Transcription:

In Re: Villa Chardonnay Horses with Wings, Inc.

November 19, 2025



--------------------------------------------------


*** AUDIO TRANSCRIPTION ***

25-04245-JBM11 Villa Chardonnay Horses with Wins,

Inc._341a_2025.11.19

In Re: Villa Chardonnay Horses with Wings, Inc.


* * *


--------------------------------------------------


Transcribed

By:  Mary Karanja

Job No.: 135577

Audio Transcription                                    November 19, 2025

```
 1        MS. HONG:  Good morning.  My name is
 2   Haeji Hong.  I am an attorney employed by the
 3   Office of the United States Trustee for the
 4   Southern District of California assigned to
 5   the Chapter 11 bankruptcy case of Villa
 6   Chardonnay Horses with Wings, Inc, case number
 7   25-04245-JBM11, which was filed on October 14,
 8   2025.  Today is November 19, 2025.  It is 9:03
 9   a.m.  This is the first meeting of creditors
10   held pursuant to 11 USC Section 341(a).
11        The purpose of this meeting is to provide
12   a forum for creditors and other parties in
13   interest to ask questions of the debtor.
14   Questions may relate to debtor's acts,
15   conduct, property, liabilities, financial
16   condition, or any other matter which may
17   affect the administration of the debtor's
18   estate.  No decisions are made here.  All
19   decisions are made at the bankruptcy court.
20   This meeting is being recorded.
21        Therefore, please identify yourself when
22   speaking and speak clearly and loudly.
23   Anybody wishing to obtain a copy of the
24   recording can go to our website which has
25   instructions on how to obtain a copy of the
```

```
 1   recording.  This is telephonic meeting of
 2   creditors.
 3       If for some reason you drop off after you
 4   have made your appearance, please dial back in
 5   until the meeting ends.  If you need to leave
 6   this meeting after you have appeared, please
 7   unmute yourself and speak up that you're about
 8   to leave.  Ms. Meredith King, are you present?
 9       MS. KING:  Yes, I am.
10       MS. HONG:  Could you state your name and
11   indicate who you're representing?
12       MS. KING:  Yes.  My name is Meredith
13   King.  I'm appearing from the law firm
14   Franklin Soto Leeds on behalf of secured
15   creditors; Richard Falls LLC, The Armbrust
16   Living Trust, and Private Mortgage
17   Incorporated.
18       MS. HONG:  Ms. Grace Wainscot, are you
19   present?
20       MS. WAINSCOT:  Yes, I am present.
21       MS. HONG:  Could you state your name and
22   who you're representing or who you're
23   appearing on behalf --
24       MS. WAINSCOT:  Grace --
25       MS. HONG:  -- of?
```

1      MS. WAINSCOT:  Grace Wainscot on behalf

2   of the Humane Farming Association.

3      MS. HONG:  Are there any other creditors

4   or parties in interest who have not checked in

5   with me online?  Okay.  Hearing none, Mr. --

6      MR. FARLEY:  Yeah.

7      MS. HONG:  -- Totaro --

8      MR. FARLEY:  This is --

9      MS. HONG:  Oh, sorry.  Go ahead.

10      MR. FARLEY:  I am representing -- sorry.

11   This is Connor Farley.  Manatt, Phelps &

12   Phillips on behalf of Arc Watch Foundation and

13   Celine Myers.

14      MS. HONG:  I'm sorry.  Could you spell

15   your last name please?

16      MR. FARLEY:  F-A-R-L-E-Y.

17      MS. HONG:  And you're representing who?

18      MR. FARLEY:  Arc Watch Foundation and

19   Celine Myers, judgment creditors.

20      MS. HONG:  Okay.  Thank you.  Is there

21   anybody else online who have not checked in

22   with me?

23      MS. MYERS:  Yes.  Celine Myers.

24      MS. HONG:  Okay.  Thank you.  Is there

25   anybody else online who have not checked in

Audio Transcription                                    November 19, 2025

1   with me?  Okay.  Hearing none, Mr. Michael

2   Totaro, could you state your name and make

3   your appearance for the debtor as debtor's

4   counsel?

5        MR. TOTARO:  Yeah.  Michael Totaro for

6   the debtor in possession.  It is possible that

7   at some points it might drop off because there

8   are -- I'm up in the Palisades and we don't

9   have really good reception on anything.  I'm

10  trying a new device today to see if that's

11  better.  But if I disappear, I will dial right

12  back in again.

13       MS. HONG:  Okay.  I will periodically

14  check to make sure you're online because I

15  will not be questioning the debtor.  And no

16  one will be allowed to question the debtor

17  without your presence.  All right.  Ms. Perez,

18  could you state your name and make your

19  appearance, please?

20       MS. KERBER:  Yeah.  My name is Monika

21  Kerber Perez.

22       MS. HONG:  And you are the president for

23  the debtor?

24       MS. KERBER:  Correct, for Villa

25  Chardonnay Horses with Wings.

1       MS. HONG:  All right.  Could you raise

2   your right hand?  And please let me know once

3   you have done so.

4       MS. KERBER:  Its done.

5       MS. HONG:  Do you swear to tell the

6   truth, the whole truth, and nothing but the

7   truth?

8       MS. KERBER:  I do.

9       MS. HONG:  You understand that you're

10  testifying under oath today under penalty of

11  perjury?

12      MS. KERBER:  I do.

13      MS. HONG:  And the penalty of perjury may

14  include a fine or imprisonment or both.  Do

15  you understand that?

16      MS. KERBER:  Yes, I do.

17      MS. HONG:  Okay.  You can lower your

18  hand.  So you were just sworn in as the person

19  who can answer my questions today.  The

20  questions are directed to you, not to your

21  counsel.  So you must answer them to the best

22  of your abilities without help from anybody

23  else.  Do you understand that?

24      MS. KERBER:  Yes, I do.

25      MS. HONG:  All right.  Is there anybody

Audio Transcription                                      November 19, 2025

```
 1  in the room with you or is it just you in the
 2  room by yourself?  Ms. Kerber, Ms. Perez?
 3       MS. KERBER:  Yes, ma'am.
 4       MS. HONG:  Did you hear my question?
 5  Hello?
 6       MS. KERBER:  Yes.  Ms. Hong, could you
 7  repeat the question again, please?
 8       MS. HONG:  I asked if anybody else was in
 9  the room with you or if you're by yourself.
10       MS. KERBER:  No.  I'm just by myself.
11       MS. HONG:  Okay.  And should I address
12  you as Ms. Kerber or Ms. Perez?  How would you
13  like to be addressed?
14       MS. KERBER:  My, my, my last name is
15  Kerber.  Please call me -- thank you.
16       MS. HONG:  Okay.
17       MS. KERBER:  Right.
18       MS. HONG:  And for everybody on the line,
19  please do not record this proceeding.  All
20  recordings are done officially by the U.S.
21  trustee's office.  Please make sure any
22  recording devices, Siri, Alexa, whatever are
23  all turned off.  It is not to be recorded by
24  any AI devices either.
25       Okay.  As I stated, the first half of the
```

1  341 -- before I started the 341, I indicated,

2  usually the U.S. trustee asks questions of the

3  debtor.  And then I open it up to creditors.

4  And so, I have a number of questions prepared.

5  And this meeting may be continued because we

6  do have some outstanding issues.  But let me

7  get started.  First, let me go through what

8  compliance documents we still need from the

9  debtor.

10      We received a lot of documents during the

11  shutdown and right after the government has

12  reopened.  And as people may be aware, during

13  the government shutdown, our office was also

14  shut down.  And so, we were not staffed at

15  full level.  Having said all of that, it looks

16  like the debtor provided some documents

17  yesterday as well, but we're still missing

18  some records.

19      I understand the insurance that would

20  cover volunteers or contractors, that's still

21  outstanding.  And so, it sounded like, from

22  the counsel's representation, that will be

23  forthcoming shortly.  So I wanted to make sure

24  that is the final liability insurance from the

25  debtor that could be provided, listing UST as

1      MR. TOTARO:  Ms. Hong, she's telling me -
2   - she's texting me that she can't get in.
3   It's not letting her get in for some reason.
4      MS. HONG:  To the line?  Well, that's --
5      MR. TOTARO:  Yeah.  I'm going to try and
6   see what's going on.
7      MS. HONG:  Can she hang up and call back
8   on?  I don't think -- this is just telephonic.
9   As long as you punch in the passcode, you
10  should be able to get in.
11     MR. TOTARO:  Yeah.  I'm texting her now,
12  to see what's going on.  So I can't even get a
13  text message to go through.
14     MS. KERBER:  Ms. Hong, I apologize, but I
15  cannot find good signal.  I'm trying to go
16  wherever I can get it.
17     MS. HONG:  Oh, good.  Ms. Kerber, you're
18  back up.
19     MR. TOTARO:  Okay, Ms. Hong.
20     MS. HONG:  Ms. King, please continue.
21  You have five minutes.
22     MS. KING:  Thank you, Ms. Hong.  Ms.
23  Kerber, the question before you was, what is -
24  - the Schedule  you filed with the amounts
25  owed to Carol Armbrust as disputed, can you

1   describe the nature of the dispute you

2   identified?

3        MS. KERBER:  That was from the advice

4   from my attorney.

5        MS. KING:   Okay.  And same question as

6   to the amount owed to Private Mortgage Lending

7   that is identified on your Schedule B is

8   disputed.  Can you provide the basis for that

9   dispute?

10        MS. KERBER:  From the advice from my

11   attorney.

12        MS. KING:  Same question as to the

13   secured claim of River Falls LLC.

14        MS. KERBER:  From the advice from my

15   attorney.

16        MS. KIN:  As you sit here testifying

17   today, can you think of any factual basis as

18   to why Villa Chardonnay would not owe Carol

19   Armbrust, Private Mortgage Lending, River

20   Falls LLC the debt secured by an interest in

21   Villa Chardonnay's property?

22        MS. KERBER:  Ms. King, you seem lost.  I,

23   I cannot hear you.

24        MS. KING:  Sure.  I'll rephrase.  I'll

25   say it again.  As you sit here today --

Audio Transcription                                         November 19, 2025

```
 1        MS. KERBER:  This is now -- it's going
 2   off.  I'm, I'm so sorry.
 3        MR. TOTARO:  Okay.  Ms. King, as to --
 4   there's no dispute as to the money that's owed
 5   your client.
 6        MS. KING:  Okay.
 7        MR. TOTARO:  There's no dispute --
 8   there's no dispute to the factual loan, any
 9   money owed to your client.  So --
10        MS. KING:  Ms. Kerber, do you have any
11   formal agreements, written agreements with any
12   donors to Villa Chardonnay?
13        MS. KERBER:  What kind of agreement?
14        MS. KING:  Written agreements with
15   donors.
16        MS. KERBER:  What kind of agreement?
17        MS. KING:  Regarding this donor lien.
18        MS. KERBER:  Ms. King?
19        MS. KING:  Yes.  I'm sorry, Ms. Kerber.
20   Could you repeat that?
21        MS. KERBER:  Yes.  I, I can't hear the
22   last question because she's cutting off.  It's
23   just, like, few words here and there.
24        MS. KING:  Do you have any written
25   agreements with donors?
```

1   identified S.M. Kazim Raza as an accountant or

2   bookkeeper on the Statement of Financial

3   Affairs filed, I believe, today.  And I, I

4   asked what services they provided the debtor,

5   what work.

6        MS. KERBER:  Well, he -- you're talking

7   about the bookkeeping.  Correct?

8        MS. KING:  The -- well, he's the -- S.M.

9   Kazim Raza is identified on the Statement of

10  Financial Affairs as an accountant or

11  bookkeeper.

12       MS. KERBER:  Yeah, yeah, bookkeeping.

13       MS. KING:  Each month they prepare

14  financial statements?

15       MS. KERBER:  Ms. King?

16       MS. KING:  They provide financial

17  statements.  Yes?

18       MS. KERBER:  Ms. King, I cannot hear you.

19  I'm so sorry.

20       MS. HONG:  Okay.  Ms. King, I --

21       MR. TOTARO:  Monika, can you hear me?

22  Can you hear me, Monika?

23       MS. KERBER:  The, the phone lost -- it's,

24  it's my signal.  Let me -- I'm trying to move

25  wherever I can get signal.

1        MS. HONG:  Okay.  All right.

2        MS. KERBER:  Ms. Hong, I can do that?

3        MS. HONG:  Yeah.  I think at this time,

4   I'm going to pause.  And I'm looking at the

5   dates.  I apologize to others who are on the

6   call, who have not been able to ask any

7   questions, but let me -- let me do that before

8   turning to anything else.

9        So when I.  Mr. Totaro, I'm assuming

10  you're going to need some time in order to

11  file the amendments and get us other

12  documentations.  Does, does -- December 3 or

13  December, 5 is that acceptable deadline for

14  the debtor to comply with what will be

15  outstanding from the U.S. trustee standpoint?

16       MS. TOTARO:  December --

17       MS. HONG:  December 5 is a Friday.  I'm

18  giving you a couple of extra days --

19       MS. TOTARO:  Yeah.

20       MS. HONG:  -- two weeks from today to

21  allow for --

22       MS. TOTARO:  That, that would be -- yeah.

23  That would be good.

24       MS. HONG:  Okay.

25       MR. TOTARO:  December 5 is fine.  I have

Audio Transcription                                          November 19, 2025

1   -- I have an appointment at 7:00 in the

2   morning, but other than that, clear.

3        MS. HONG:  Yeah.  That -- and that's just

4   for deadline for debtor to comply.  And I'm

5   allowing for a couple of days of Thanksgiving

6   next week as -- just holidays.  So December 16

7   at, let's say, 9 o'clock, would that work, to

8   come into the U.S. trustee's office to

9   continue the meeting of the creditors?  So

10  first, I'm going to ask Ms. Kerber.  Are you

11  available December 16 at 9:00 to come into

12  Downtown San Diego?

13       MS. KERBER:  I'll make myself available.

14       MR. TOTARO:  Ms. Hong, I might be gone

15  from December 20 until the end of the year.

16       MS. HONG:  Oh.

17       MR. TOTARO:  But I could do it on the

18  14th.

19       MS. HONG:  14th?  You mean a Sunday?

20       MR. TOTARO:  Oh, sorry.  But frankly, at

21  this -- at this point, yes, I would be fine.

22  Let's see.  December (indiscernible).  What

23  about Friday, December 13th?

24       MS. HONG:  Okay.  So --

25       MR. TOTARO:  And I'm assuming you don't

Audio Transcription                                    November 19, 2025

1   want to carry this over until January.  So --
2        MS. HONG:  If I'm looking at the previous
3   time, I think -- Thursday, December 11 in the
4   morning, would that work or Wednesday,
5   December 10th at 1 o'clock?
6        MR. TOTARO:  15, as far as I'm concerned.
7        MS. HONG:  So 15, December 15?  Okay.
8        MR. TOTARO:  I'm sorry, you said 10.  So
9   --
10       MS. HONG:  Looking at --
11       MR. TOTARO:  -- December, Thursday 11 is
12   fine.
13       MS. HONG:  Thursday 11:00 either morning
14   or Thursday, 10 -- Wednesday, the 10th
15   December at 1 o'clock.  Which --
16       MS. KERBER:  I have another -- I have
17   another 341 now.  So Thursday in the morning
18   is better on my end.
19       MS. HONG:  Thursday morning at 9:00.  Ms.
20   Kerber, are you available?  Ms. Kerber?  All
21   right.  When she comes back on, I'll ask her.
22   Ms. King, are you available on Thursday,
23   December 11 at 9:00?  It will be in our
24   office.
25       MS. KING:  Yes.

```
 1        MS. HONG:  Okay.  Ms. Grace Wainscot, are
 2   you available to come into Downtown San Diego
 3   on December 11 at 9:00?
 4        MS. WAINSCOT:  Ms. Hong, I'm not
 5   available to come in in person, but is there a
 6   possibility of attending remotely?
 7        MS. HONG:  Okay.  I will see if you could
 8   call in.  I think when we dock it, it only
 9   gives me one, one choice on how to notice out.
10   But I -- I'm assuming I am allowed to let you
11   in through the same, same phone number and the
12   passcode.
13        MS. WAINSCOT:  Okay.
14        MS. HONG:  Mr. Farley, are you available
15   December 11 at 9:00 a.m. to attend in person?
16        MR. FARLEY:  Available.  Although, I also
17   would prefer remote.
18        MS. HONG:  Okay.  Ms. Myers, are you
19   available to attend in person on December 11
20   at 9:00 a.m.?
21        MS. MYERS:  I'm available, but I too
22   would prefer to attend via remote.
23        MS. HONG:  Okay.  Mr. Totaro, I
24   understand your battery might be kind of low.
25   Is, is there any way that you can somehow
```

Audio Transcription                                    November 19, 2025

1  reach Ms. Kerber to see if she is available to

2  come in person on December 11 at 9:00 a.m.?

3      MR. TOTARO:  She said she would be

4  available anytime.  So I -- hold on.  My

5  phone's actually ringing.  Maybe I can get

6  her.

7      MS. HONG:  Okay.  All right.  So then I

8  can continue this, once Ms. Kerber gets back

9  online, to December 11 at 9:00 and -- with the

10 understanding that I will have the telephone

11 line also available for people to call in

12 remotely so that they can ask questions.  By

13 my count, Ms. Wainscot, Mr. Farley, and Ms.

14 Myers, I still have not asked whether or not

15 you have any questions.  To the extent that

16 Ms. Kerber is unable to join back in -- I am

17 very sorry, but I think your questions would

18 have to be at the continuing meeting of

19 December 11.  If you don't mind waiting a few

20 more minutes, let's see if Ms. Kerber is able

21 to get back.  And we'll take it from there.

22     MR. TOTARO:  Ms. Hong, I will extend an

23 invitation to all counsel that's on the line.

24 If somebody wants to notice a 2004 exam before

25 that date -- maybe we can clear up all your

1    questions so that the U.S. trustee doesn't

2    have to sit around for 2 hours listening to

3    questions -- I would be amenable to that.  So

4    if somebody wants to contact me offline to do

5    that, that's fine.

6         MS. HONG:  All right.  So I gave it a

7    couple minutes.  Ms. Kerber, are you on?

8         MR. TOTARO:  I can't -- I can't reach her

9    either, I can't.

10        MS. HONG:  Okay.  I am deeply apologetic

11   to Ms. Wainscot, Mr. Farley, and Ms. Myers.  I

12   -- obviously with the technical difficulties

13   and the amount of questioning, I -- I'm sorry

14   that you did not have a chance to ask

15   questions today.  But I am going to continue

16   this for in-person continued meeting of

17   creditors on December 11 at 9:00 a.m.  Our

18   office is located at 880 Front Street, suite

19   number 3230.

20        We will not be conducting downstairs in

21   the first floor, but it will be in our

22   conference room.  And anybody who have

23   expressed to join remotely are allowed to come

24   in person and ask questions in person.  I

25   would encourage you to do it, just so that we

 1   don't have any more technical difficulties.

 2   It might be a little easier, although I

 3   understand that it might not make logistical

 4   sense.

 5        But otherwise, I will dock it for in-

 6   person and I will -- and I just got word that

 7   it may actually -- I may actually be able to

 8   conduct it, not in our conference room, but

 9   downstairs.  So it may not be a notice docket

10   today.

11        It might be tomorrow.  And for Ms.

12   Wainscot, Mr. Farley, and Ms. Myers, could you

13   email me directly so that I can email back to

14   you and make sure you are aware of how to

15   attend the continued meeting so you can ask

16   your questions if you're attending remotely?

17   Let me --

18        MR. FARLEY:  Okay.

19        MS. HONG:  Let me give you my email

20   address.  I just -- I just wanted to make sure

21   that you're not locked by the dockets and

22   whatnot.  So my email address is Haeji, H-A-E-

23   J-I, dot Hong, H-O-N-G at U.S. DOJ dot gov.

24   Again, that's Haeji, H-A-E-J-I, dot Hong, H-O-

25   N-G at U.S. DOJ dot gov, G-O-V.

1       Please just include your -- the case name

2    and number, Villa Chardonnay Horses with

3    Wings, case number 25-04245, that you were a

4    creditor who appeared or a party in interest

5    who appeared this morning and -- so that I

6    have your contact info so that I can let you

7    know how to attend remotely if that is your

8    preference or if that's the only way of

9    attending at the continued meeting.  All

10   right.

11       With that, the meeting will stand

12   continued to December 11 at 9:00 a.m., to be

13   in person for debtor and debtor's counsel.

14   That's mandatory.  So Mr. Totaro, I am

15   expecting you to appear here in person with

16   Ms. Kerber.

17       All of the compliance requirements that

18   the U.S. trustee had requested, including --

19   based on the testimony today, they are due by

20   December 5, including filing of any

21   amendments.  Okay?  All right.  This meeting -

22   -

23       MR. TOTARO:  (indiscernible).  By the

24   way, for everybody, the call in number is

25   still the same, that ends in 3441.  That is

1    correct?

2         MS. HONG:  I, I believe so.  I -- but I

3    don't want to make that commitment until I get

4    some internal confirmation because we've moved

5    away from conducting in-person meetings of

6    creditors.  I'm not sure if there's some other

7    phone number that I may be asking the

8    creditors to utilize.

9         And so, that's why I would like all of

10   the other creditors to -- and the party in

11   interest, who were not able to ask questions

12   to email me directly so that I have your

13   contact information.  Okay.  This meeting

14   stands to continue --

15        MR. TOTARO:  Will you be -- will you be

16   available for a conversation this afternoon?

17   I have another 341 in your office at 1

18   o'clock, but besides that --

19        MS. HONG:  Yes.  I -- yes, I am

20   available, if you want to give me a call after

21   your 341.  If not this afternoon, then we can

22   touch base tomorrow morning?

23        MR. TOTARO:  That is fine.

24        MS. HONG:  Okay.  Great.  Thank you.

25        MR. TOTARO:  Thank you.

Audio Transcription                                    November 19, 2025

1

2    (End of audio recording.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        CERTIFICATE OF TRANSCRIPTIONIST

2

3        I, MARY KARANJA, do hereby certify:

4

5        That said audio transcription is a true

6    record as reported by me, a disinterested

7    person.

8

9        I further certify that I am not

10    interested in the outcome of said action, nor

11    connected with, nor related to any of the

12    parties in said action, nor to their

13    respective counsel.

14

15        IN WITNESS THEREOF, I have hereunto set

16    my hand this 6th day of January, 2026.

17

18

19    _____

          Mary Karanja

20

21

22

23

24

25

# EXHIBIT "2"

**Wednesday, January 14, 2026 at 12:33:18 PM Pacific Standard Time**

**Subject:** RE: Villa Chardonnay Horses with Wings, Inc. 25-04245-JBM11 - continued 341 to 1/7/26
**Date:**    Monday, December 8, 2025 at 10:38:32 AM Pacific Standard Time
**From:**    Hong, Haeji (USTP)
**CC:**      Dougherty, Christina (USTP)

Dear All,
The continued meeting of creditors in this case, scheduled for 12/11/25 at 9:00 am will be continued likely to 1/7/26 at 1:00 pm.  I understand the Debtor's representative cannot appear due to unforeseen personal reasons, and the UST will continue the meeting of creditors without having the Debtor appear.  Once I have confirmed that 1/7/26 at 1:00 pm is acceptable for the Debtor and Debtor's counsel to appear in person (all creditors MUST appear by telephone), I will docket the new date and time.
Thank you,

**Haeji Hong**
Trial Attorney
U.S. Trustee's Office
880 Front Street, Suite 3230
San Diego, CA 92101
T:  (619) 557-5013 ext 4798

**From:** Hong, Haeji (USTP)
**Sent:** Thursday, November 20, 2025 9:11 AM
**Cc:** Dougherty, Christina (USTP) <Christina.Dougherty@usdoj.gov>
**Subject:** Villa Chardonnay Horses with Wings, Inc. 25-04245-JBM11 - continued 341

Dear All,
I have bcc'ed the creditors and debtor's counsel's emails who appeared at the meeting of creditors earlier this week.  Please note that the debtor and debtor's counsel MUST appear in person.  **All other creditors MUST appear by telephone** – creditors will not be allowed to appear in person at the continued meeting of 12/11/25 at 9:00 a.m.  Telephone access information is the same.
Thank you,

**Haeji Hong**
Trial Attorney
U.S. Trustee's Office
880 Front Street, Suite 3230
San Diego, CA 92101
T:  (619) 557-5013 ext 4798

# EXHIBIT "3"

**Subject:** Potential Note Purchase
**Date:** Thursday, November 13, 2025 at 7:14:12 PM Pacific Standard Time
**From:** Meredith King
**To:** Totaro & Shanahan, LLP

Michael,

Thank you for reaching out yesterday regarding the potential purchase of my clients' promissory note. I advised my clients of your offer and am writing to request some additional information to assist in evaluating its terms.  To evaluate the proposal efficiently and avoid unnecessary back-and-forth, could you please provide the following?

1) **Transaction structure**
- Whether the party you identified is interested in a whole-loan sale, some type of assignment, or a refinancing
- If interested in purchasing the note, confirmation that the buyer will accept a customary **as-is, where-is, with limited seller reps/no recourse** structure (typical for note sales)

2) **Economics**
- Earnest money amount, escrow instructions, and refundability conditions
- Proof of funds (bank letter, attorney trust letter, or equivalent)

3) **Process & timing**
- Proposed diligence period and target closing date

4) **Anonymity parameters**
- Contact information for the buyer's counsel or authorized agent, if identity remains shielded
- Whether identity can be disclosed to counsel under an NDA and if not, what additional confidentiality concerns would prevent such disclosure

If easier,  I'm available to connect by phone before 1:30 PM and after 2:30 PM next Wednesday.

Best,

Meredith


**Meredith King**
Admitted in CA

photo-logo

| 444 W C St, Ste 300
San Diego, CA 92101
600 17th St. Ste 2800 S
Denver, CO 80202
FSL.law | 619.872.2581

IMPORTANT: This message is confidential. It may also be privileged or otherwise protected by work product immunity or other legal rules. If you have received it by mistake, please let us know by e-mail reply and delete it from your system; you may not copy this message or disclose its contents to anyone.

# EXHIBIT "4"

**Wednesday, January 14, 2026 at 12:40:38 PM Pacific Standard Time**

**Subject:** Re: Potential Note Purchase
**Date:** Monday, December 8, 2025 at 2:00:34 PM Pacific Standard Time
**From:** Totaro & Shanahan, LLP
**To:** mking@fsl.law
**CC:** pleeds@fsl.law

All accepted except the following.

We will provide the entity name and copies of my trust account showing the funds But we will not disclose the owners of the entity under any circumstances.  The funds will be in my account so there is no issue of non payment.

As  a side note the lender has 100,000,000 in their account so this is not a problem. They are transferring 4.5M to my trust account to cover your loan and the small business loan.

I expected the funds today but it may take a couple of days longer since the funds are coming international.

Please prepare whatever you need to assign the lien.

Michael R. Totaro J.D., LL.M.
Totaro & Shanahan
P.O. Box 789
Pacific Palisades, CA 90272
310 804 2157

www.TotaroandShanahan.com

Deuteronomy 15:1-2
At the end of every seven years you shall grant a release. And this is the manner of the release: every creditor shall release what he has lent to his neighbor. He shall not exact it of his neighbor, his brother, because the Lord's release has been proclaimed.

In its infinite wisdom, the Legislature has extended this to 8 years!!

The parties expressly do not provide, AOL, Google, Microsoft or any other ISP permission  to read this email and view its contents. All ISP, including AOL and Google, Microsoft are expressly prohibited from using any means including creating a hash value for the contents of the email, to view the contents of this email.
In a message dated 12/8/2025 11:35:17 AM Pacific Standard Time, mking@fsl.law writes:

> Michael:
>
> Thank you for following up on the proposed purchase of my clients' note.
>
> I understand the terms currently proposed are as follows:

1. The note will be purchased as-is, with payment of the full loan balance, including all fees, costs, and interest.
2. Proof of funds will not be an issue.
3. Closing will occur within two weeks of execution of an agreement.
4. Counsel for the debtor-in-possession will act as both counsel and manager for the buyer.

My clients' are willing to consider a purchase under these terms once a signed letter of intent is received that: (a) identifies the identity of the purchasing party and (b) is accompanied by proof of funds in the buyer's name demonstrating they have sufficient means to purchase the note at full value.

Disclosure of the buyer's identity is essential from both a due diligence and compliance prospective. My clients need assurances the buyer will be able to pay the agreed purchase price in full and on time and we need to ensure that any required approval of the bankruptcy court is received.

Best,

Meredith

photo-logo

**Meredith King**
Admitted in CA
| ☐                          444 W C St, Ste 300
  San Diego, CA 92101
☐ 600 17th St. Ste 2800 S
  Denver, CO 80202
☐ FSL.law | ☐  619.872.2581



IMPORTANT: This message is confidential. It may also be privileged or otherwise protected by work product immunity or other legal rules. If you have received it by mistake, please let us know by e-mail reply and delete it from your system; you may not copy this message or disclose its contents to anyone.

**From:** Totaro & Shanahan, LLP <ocbkatty@aol.com>
**Date:** Wednesday, November 19, 2025 at 1:00 PM
**To:** Meredith King <mking@fsl.law>, monika@villachardonnay.com <monika@villachardonnay.com>
**Subject:** Fwd: Potential Note Purchase


see below
Michael R. Totaro J.D., LL.M.
Totaro & Shanahan
P.O. Box 789
Pacific Palisades, CA 90272
310 804 2157

www.TotaroandShanahan.com

Deuteronomy 15:1-2
At the end of every seven years you shall grant a release. And this is the manner of the release: every creditor shall release what he has lent to his neighbor. He shall not exact it of his neighbor, his brother, because the Lord's release has been proclaimed.

In its infinite wisdom, the Legislature has extended this to 8 years!!

The parties expressly do not provide, AOL, Google, Microsoft or any other ISP permission  to read this email and view its contents. All ISP, including AOL and Google, Microsoft are expressly prohibited from using any means including creating a hash value for the contents of the email, to view the contents of this email.

From: ocbkatty@aol.com
To: mking@fsl.law, lin@aol.com
Sent: 11/19/2025 12:58:30 PM Pacific Standard Time
Subject: Re: Potential Note Purchase

) **Transaction structure**
- Whether the party you identified is interested in a whole-loan sale, some type of assignment, or a refinancing

- If interested in purchasing the note, confirmation that the buyer will accept a customary **as-is, where-is, with limited seller reps/no recourse** structure (typical for note sales)
- Whichever keeps the lien in place without have to seek subordination probably an assignment
- Yes as is etc.

2) **Economics**
- Earnest money amount, escrow instructions, and refundability conditions
- Proof of funds (bank letter, attorney trust letter, or equivalent)

**Not a problem Prefer Siright Escrow in Pasadena she is used to dealing with bk problems. Other than that no opinion**

3) **Process & timing**

- Proposed diligence period and target closing date

**Funds are expected in under two weeks. asap thereafter**

- 4) **Anonymity parameters**

- Contact information for the buyer's counsel or authorized agent, if identity remains shielded

- Whether identity can be disclosed to counsel under an NDA and if not, what additional confidentiality concerns would prevent such disclosure

**I will act as counsel and manager for the lender**

Michael R. Totaro J.D., LL.M.
Totaro & Shanahan
P.O. Box 789
Pacific Palisades, CA 90272
310 804 2157

www.TotaroandShanahan.com

Deuteronomy 15:1-2
At the end of every seven years you shall grant a release. And this is the manner of the release: every creditor shall release what he has lent to his neighbor. He shall not exact it of his neighbor, his brother, because the Lord's release has been proclaimed.

In its infinite wisdom, the Legislature has extended this to 8 years!!

The parties expressly do not provide, AOL, Google, Microsoft or any other ISP permission  to read this email and view its contents. All ISP, including AOL and Google, Microsoft are expressly prohibited from using any means including creating a hash value for the contents of the email, to view the contents of this email.

In a message dated 11/13/2025 7:14:15 PM Pacific Standard Time, mking@fsl.law writes:


) **Transaction structure**
- Whether the party you identified is interested in a whole-loan sale, some type of assignment, or a refinancing
- If interested in purchasing the note, confirmation that the buyer will accept a customary **as-is, where-is, with limited seller reps/no recourse** structure (typical for note sales)

2) **Economics**
- Earnest money amount, escrow instructions, and refundability conditions
- Proof of funds (bank letter, attorney trust letter, or equivalent)

3) **Process & timing**
- Proposed diligence period and target closing date

4) **Anonymity parameters**
- Contact information for the buyer's counsel or authorized agent, if identity remains shielded
- Whether identity can be disclosed to counsel under an NDA and if

not, what additional confidentiality concerns would prevent such disclosure

# EXHIBIT "5"

**Wednesday, January 14, 2026 at 12:47:32 PM Pacific Standard Time**

| | |
|---|---|
| **Subject:** | Re: Villa Chardonnay |
| **Date:** | Friday, December 12, 2025 at 5:13:07 PM Pacific Standard Time |
| **From:** | Meredith King |
| **To:** | Dylan Noceda, ocbkatty@aol.com |
| **CC:** | Paul J. Leeds |
| **Priority:** | High |
| **Attachments:** | Outlook-ocr3kd0b.png |

Michael:

Following up on Dylan's email, I also wanted to confirm:

1. <u>Note Purchase.</u>  We remain open to the purchase of our note. However, we believe *Walldesign*, 872 F.3d at 968 (cited in Paul's email earlier this week), makes clear our clients have a burden to monitor for fraud.

   Recall in that case the Ninth Circuit held  the creditor was on notice of a fraudulent transfer where they sold their property to a third party but received payment from another source, which Ninth Circuit held provided them notice of "an irregularity in the payments." We are concerned payment from your trust account would be sufficient to put our clients on notice of an irregularity in payment that could put them at risk of a claw back. This is especially true given the representation made in connection with your employment application that you do not have any connection with "the Debtor, the creditors, any party in interest, their respective attorneys or accounts, or with the Office of the United States Trustee or court in any area of the country." Doc. 39, pg. 4, ¶ 10.

   If you have been retained by third party to acquire our note we would expect this to be disclosed under Fed. R. Bankr. P. 2014. *See* In re Condor Sys., Inc., 302 B.R. 55, 70 (Bankr. N.D. Cal. 2003) (the disclosure requirement of Rule 2014 "is a continuing one, even after an application for employment is approved" and requires disclosure of all connections even if they are "irrelevant or trivial").

   Based on our understanding of the applicable law, as mentioned yesterday; to move forward we need proof of funds identifying the source of the money (including the principals of any entity). However, we are open to any disclosure being confidential and subject to a non-disclosure agreement, and, in this context, I mentioned yesterday that it would be helpful to know: (1) why confidentiality is required and (2) why another attorney cannot be hired to represent the buyer. I understand you will be following up with the buyer accordingly.

2. <u>Alleged Deficiencies in Our Clients Note.</u> During our conversation yesterday, you

mentioned that if my clients were unwilling to sell their Note on the proposed terms, the debtor planned to characterize the debt as individual liability subject to discharge in her individual bankruptcy and then seek to void the lien asserted against Villa Chardonnay's property.  You  mentioned that you anticipated receiving a "report" from Mr. Doss detailing deficiencies in the loan documents and disclosures provided in connection with the loan shortly.

To assist us in evaluating this position, I would request  you provide the legal authority supporting any position you may have that my client's loan or lien against the debtor's property is somehow defective as soon as possible, as well as any "report" from Mr. Doss. This would greatly assist me in advising my clients on best way to proceed moving forward, and if you could provide this by December 29 as well it would be greatly appreciated.

Best,

Meredith

photo-logo

**Meredith King**
Admitted in CA
| ☐                      444 W C St, Ste 300
  San Diego, CA 92101
☐ 600 17th St. Ste 2800 S
  Denver, CO 80202
☐ FSL.law | ☐ 619.872.2581



IMPORTANT: This message is confidential. It may also be privileged or otherwise protected by work product immunity or other legal rules. If you have received it by mistake, please let us know by e-mail reply and delete it from your system; you may not copy this message or disclose its contents to anyone.

**From:** Dylan Noceda <dnoceda@fsl.law>
**Date:** Friday, December 12, 2025 at 1:37 PM
**To:** ocbkatty@aol.com <ocbkatty@aol.com>
**Cc:** Meredith King <mking@fsl.law>
**Subject:** Villa Chardonnay

Mr. Totaro,

This email is to confirm that after yesterday's status conference you let Meredith and me know that you and your client will:

- Permit creditors to send a private appraiser to inspect the property;

- Send us a copy of Villa Chardonnay's Workers' Compensation Insurance Policy;

- Contact the California FAIR Plan Association and ensure the 4430 Boulder Creek Rd. property is added to the FAIR Policy and send us proof when that has been completed;

- Ensure all Creditors are added as "additional insureds" to the Kinsale General Liability Policy and send us proof when that has been completed;

- Send us copies of all insurance applications, statements, submissions, and/or other communications from Villa Chardonnay to either Slade Brown or Kinsale that were used to obtain coverage under the Kinsale Policy;

- Send us the final version (not the draft version) of the 90-day projection;

- Send us copies of Villa Chardonnay's bank records.

Please provide the requested materials by December 29, and let us know as soon as possible any date(s) within the first two weeks of January that the property is available for inspection by the appraiser.

Thank you,
Dylan Noceda

FRANKLIN
SOTO
LEEDS LLP

**Dylan A. Noceda**
Admitted in CA

☐ 444 W C St, Ste 300
   San Diego, CA 92101
☐ 600 17th St. Ste 2800 S
   Denver, CO 80202
☐ FSL.law | ☐ 619.833.7327

IMPORTANT: This message is confidential. It may also be privileged or otherwise protected by work product immunity or other legal rules. If you have received it by mistake, please let us know by e-mail reply and delete it from your system; you may not copy this message or disclose its contents to anyone.

# EXHIBIT "6"

| | |
|---|---|
| **Subject:** | Re: Potential Note Purchase |
| **Date:** | Monday, December 15, 2025 at 2:10:17 PM Pacific Standard Time |
| **From:** | Paul J. Leeds |
| **To:** | Totaro & Shanahan, LLP |
| **CC:** | Meredith King |
| **Attachments:** | 2020 03 11 Villa Chardonnay Note Secured By Deed Of Trust RF.pdf, 2020 031620 Villa Chardonnay Signed Short Form Deed Of Trust And Assignment Of Rents RF.pdf |

Hi Michael-

The attached note dated March 11, 2020 in the amount of $1,600,000 includes a signature above the printed name "Villa Chardonnay- Horses with Wings, A California Nonprofit Corporation."

The attached short form deed of trust also dated March 11, 2020, purports to be made by "Villa Chardonnay- Horses with Wings, A California Nonprofit Corporation, as Trustor." The deed of trust recites that it is made for the "Purpose of Securing… 2. Payment of the indebtedness evidence d by one promissory note of even date herewith, and any extensions or general thereof, in the principal sum of $1,600,000 executed by Trustor in favor of Beneficiary or order…"

Accordingly, the note and trust deed appear to be made by the same entity (Villa Chardonnay-Horses with Wings, A California Nonprofit Corporation),and the note appears to be secured by the property at 4554 Boulder Creek Road.  Let us know if you are in possession of additional documents, or if this is not the property at issue in the case.  R / PJL

**From:** Totaro & Shanahan, LLP <ocbkatty@aol.com>
**Date:** Saturday, December 13, 2025 at 8:39 PM
**To:** Paul J. Leeds <pleeds@fsl.law>
**Subject:** Re: Potential Note Purchase

Unless I have the wrong note, please explain how a note signed by Monika individually entitles you to put a lien on a separate entity that owns the property.

It is her personal residence but she is not the owner on title which your broker knew

Michael R. Totaro J.D., LL.M.
Totaro & Shanahan
P.O. Box 789
Pacific Palisades, CA 90272
310 804 2157

www.TotaroandShanahan.com

Deuteronomy 15:1-2
At the end of every seven years you shall grant a release. And this is the manner of the release: every creditor shall release what he has lent to his neighbor. He shall not exact it of his neighbor, his brother, because the Lord's release has been proclaimed.

In its infinite wisdom, the Legislature has extended this to 8 years!!

The parties expressly do not provide, AOL, Google, Microsoft or any other ISP permission to read this email and view its contents. All ISP, including AOL and Google, Microsoft are expressly prohibited from using any means including creating a hash value for the contents of the email, to view the contents of this email.
In a message dated 12/9/2025 11:43:32 AM Pacific Standard Time, pleeds@fsl.law writes:

Hi Michael-

This feels like a sub-rose plan.  As I see this, there are two frameworks for this:

1. Claim purchase by True 3d Party. If a third party is buying our secured claim, our clients need to conduct a certain amount of diligence on the buyer to avoid exposure to clawback actions.  Recall that the 9th Circuit puts the burden squarely on the seller to ensure that they are not the transferee of improperly sourced funds.  See *In re Walldesign, Inc.*, 872 F.3d 954 (9th Cir. 2017).  It is extremely concerning that the seller does not want to disclose the source of the funds, and that is a deal breaker.  We cannot accept a mere trust account transfer without confirming the source and ownership of the funds being used for the note purchase, in writing.  There are many, many reasons for this.

2. Payment of Claim by Debtor.  If the funds are sourced from the debtor or insiders, then we need Bankruptcy Court approval to avoid clawback exposure under section 549.  If this amounts to new financing on behalf of the Debtor, then we need approval under Section 364.   Failure to observe these requirements can lead to disgorgement of funds and potentially loss of our claim. Our clients will not take that risk.

While our clients want to see full recovery on their claims, we can't advise them to accept payment in a manner that exposes them to potential additional exposure or otherwise violates the express requirements of the Bankruptcy Code.

Given that you are counsel for the Estate, and will have to disclose any connections with creditors or parties in interest (a buyer of our note would be both) under the continuing obligations of Rule 2014, it seems like the Buyer should have separate counsel. If the buyer has the money to buy these notes, then they certainly can afford separate counsel for that purpose, and it would avoid dragging you into the middle of it.  Having said that, we will still insist on confirmation of the ownership and source of the funds used for the purchase, for the reasons set forth above.

R / PJL

**From:** ocbkatty (null) <ocbkatty@aol.com>
**Date:** Tuesday, December 9, 2025 at 8:53 AM
**To:** Meredith King <mking@fsl.law>
**Cc:** Paul J. Leeds <pleeds@fsl.law>
**Subject:** Re: Potential Note Purchase

I will send a letter of intent. Once funds are received. I do not hold any money in my trust account. It is there just for purposes like this so it's in and out, but I will show you the wire transfer into the account. That's the best I can do currently my trust account is at a zero balance. I expect that they will be wire transferring $8 million into the account, but we can talk when all of that happens.

Michael R. Totaro J.D. LL. M

Totaro & Shanahan

P.O. Box 789

Pacific Palisades, CA 90272

888 425 2889

(888 4 BKATTY)

(o) 310 804 2157 (c)

Www.Totaroandshanahan.com

> On Dec 8, 2025, at 6:54 PM, Meredith King <mking@fsl.law> wrote:
>
> Michael:
>
> No agreement has been reached, and no documents will be prepared until a letter of intent is received signed by a principal of the proposed buyer that has authority to act on the entities' behalf along with proof of funds demonstrating that the _buyer_ has funds sufficient to close.
>
> Documentation that money has been deposited into your client trust account will not suffice as we have no way of distinguishing whether such funds belong to the proposed buyer.

Best,


Meredith


| photo-logo | **Meredith King** |
| | Admitted in CA |
| | ☐    444 W C St, Ste 300 |
| | San Diego, CA 92101 |
| | ☐ 600 17th St. Ste 2800 S |
| | Denver, CO 80202 |
| | ☐ FSL.law I ☐ 619.872.2581 |

IMPORTANT: This message is confidential. It may also be privileged or otherwise protected by work product immunity or other legal rules. If you have received it by mistake, please let us know by e-mail reply and delete it from your system; you may not copy this message or disclose its contents to anyone.

**From:** Totaro & Shanahan, LLP <ocbkatty@aol.com>
**Date:** Monday, December 8, 2025 at 2:00 PM
**To:** Meredith King <mking@fsl.law>
**Cc:** Paul J. Leeds <pleeds@fsl.law>
**Subject:** Re: Potential Note Purchase

All accepted except the following.

We will provide the entity name and copies of my trust account showing the funds But ==we will not disclose the owners of the entity under any circumstances==.  The funds will be in my account so there is no issue of non payment.

As  a side note the lender has 100,000,000 in their account so this is not a problem. They are transferring 4.5M to my trust account to cover your loan and the small business loan.

I expected the funds today but it may take a couple of days longer since the funds are coming international.

Please prepare whatever you need to assign the lien.

Michael R. Totaro J.D., LL.M.

Totaro & Shanahan

P.O. Box 789

Pacific Palisades, CA 90272

310 804 2157

www.TotaroandShanahan.com

Deuteronomy 15:1-2

At the end of every seven years you shall grant a release. And this is the manner of the release: every creditor shall release what he has lent to his neighbor. He shall not exact it of his neighbor, his brother, because the Lord's release has been proclaimed.

In its infinite wisdom, the Legislature has extended this to 8 years!!

The parties expressly do not provide, AOL, Google, Microsoft or any other ISP permission  to read this email and view its contents. All ISP, including AOL and Google, Microsoft are expressly prohibited from using any means including creating a hash value for the contents of the email, to view the contents of this email.

In a message dated 12/8/2025 11:35:17 AM Pacific Standard Time, mking@fsl.law

writes:

Michael:

Thank you for following up on the proposed purchase of my clients' note.

I understand the terms currently proposed are as follows:

1. The note will be purchased as-is, with payment of the full loan balance, including all fees, costs, and interest.
2. Proof of funds will not be an issue.
3. Closing will occur within two weeks of execution of an agreement.
4. Counsel for the debtor-in-possession will act as both counsel and manager for the buyer.

My clients' are willing to consider a purchase under these terms once a signed letter of intent is received that: (a) identifies the identity of the purchasing party and (b) is accompanied by proof of funds in the buyer's name demonstrating they have sufficient means to purchase the note at full value.

Disclosure of the buyer's identity is essential from both a due diligence and compliance prospective. My clients need assurances the buyer will be able to pay the agreed purchase price in full and on time and we need to ensure that any required approval of the bankruptcy court is received.

Best,

Meredith

**Meredith King**

photo-logo

Admitted in CA

444 W C St, Ste 300
San Diego, CA 92101
600 17th St. Ste 2800 S
Denver, CO 80202
FSL.law I 619.872.2581

IMPORTANT: This message is confidential. It may also be privileged or otherwise protected by work product immunity or other legal rules. If you have received it by mistake, please let us know by e-mail reply and delete it from your system; you may not copy this message or disclose its contents to anyone.

---

**From:** Totaro & Shanahan, LLP <ocbkatty@aol.com>
**Date:** Wednesday, November 19, 2025 at 1:00 PM
**To:** Meredith King <mking@fsl.law>,
monika@villachardonnay.com <monika@villachardonnay.com>
**Subject:** Fwd: Potential Note Purchase

see below

Michael R. Totaro J.D., LL.M.

Totaro & Shanahan

P.O. Box 789

Pacific Palisades, CA 90272

310 804 2157

www.TotaroandShanahan.com

Deuteronomy 15:1-2

At the end of every seven years you shall grant a release. And this is the manner of the release: every creditor shall release what he has lent to his neighbor. He shall not exact it of his neighbor, his brother, because the Lord's release has been proclaimed.

In its infinite wisdom, the Legislature has extended this to 8 years!!

The parties expressly do not provide, AOL, Google, Microsoft or any other ISP permission  to read this email and view its contents. All ISP, including AOL and Google, Microsoft are expressly prohibited from using any means including creating a hash value for the contents of the email, to view the contents of this email.

---

From: ocbkatty@aol.com
To: mking@fsl.law, lin@aol.com
Sent: 11/19/2025 12:58:30 PM Pacific Standard Time
Subject: Re: Potential Note Purchase

) **Transaction structure**

- Whether the party you identified is interested in a whole-loan sale, some type of assignment, or a refinancing

·        If interested in purchasing the note, confirmation that the buyer will accept a customary **as-is, where-is, with limited seller reps/no recourse** structure (typical for note sales)

·        Whichever keeps the lien in place without have to seek subordination probably an assignment

·        Yes as is etc.

2) **Economics**

- Earnest money amount, escrow instructions, and refundability conditions

- Proof of funds (bank letter, attorney trust letter, or equivalent)

**Not a problem Prefer Siright Escrow in Pasadena she is used to dealing with bk problems. Other than that no opinion**

3) **Process & timing**

· Proposed diligence period and target closing date

**Funds are expected in under two weeks. asap thereafter**

· 4) **Anonymity parameters**

- Contact information for the buyer's counsel or authorized agent, if identity remains shielded

· Whether identity can be disclosed to counsel under an NDA and if not, what additional confidentiality concerns would prevent such disclosure

**I will act as counsel and manager for the lender**

Michael R. Totaro J.D., LL.M.

Totaro & Shanahan

P.O. Box 789

Pacific Palisades, CA 90272

310 804 2157

www.TotaroandShanahan.com

Deuteronomy 15:1-2

At the end of every seven years you shall grant a release. And this is the manner of the release: every creditor shall release what he has lent to his neighbor. He shall not exact it of his neighbor, his brother, because the Lord's release has been

proclaimed.

In its infinite wisdom, the Legislature has extended this to 8 years!!

The parties expressly do not provide, AOL, Google, Microsoft or any other ISP permission to read this email and view its contents. All ISP, including AOL and Google, Microsoft are expressly prohibited from using any means including creating a hash value for the contents of the email, to view the contents of this email.

In a message dated 11/13/2025 7:14:15 PM Pacific Standard Time, mking@fsl.law writes:

) **Transaction structure**

- Whether the party you identified is interested in a whole-loan sale, some type of assignment, or a refinancing

- If interested in purchasing the note, confirmation that the buyer will accept a customary **as-is, where-is, with limited seller reps/no recourse** structure (typical for note sales)

2) **Economics**

- Earnest money amount, escrow instructions, and refundability conditions

- Proof of funds (bank letter, attorney trust letter, or equivalent)

3) **Process & timing**

- Proposed diligence period and target closing date

4) **Anonymity parameters**

- Contact information for the buyer's counsel or

authorized agent, if identity remains shielded

- Whether identity can be disclosed to counsel under an NDA and if not, what additional confidentiality concerns would prevent such disclosure

# EXHIBIT "7"

**Wednesday, January 14, 2026 at 1:08:35 PM Pacific Standard Time**

| | |
|---|---|
| **Subject:** | Villa Chardonnay |
| **Date:** | Friday, December 12, 2025 at 1:37:01 PM Pacific Standard Time |
| **From:** | Dylan Noceda |
| **To:** | ocbkatty@aol.com |
| **CC:** | Meredith King |
| **Attachments:** | Outlook-ocr3kd0b.png |

Mr. Totaro,

This email is to confirm that after yesterday's status conference you let Meredith and me know that you and your client will:

- Permit creditors to send a private appraiser to inspect the property;

- Send us a copy of Villa Chardonnay's Workers' Compensation Insurance Policy;

- Contact the California FAIR Plan Association and ensure the 4430 Boulder Creek Rd. property is added to the FAIR Policy and send us proof when that has been completed;

- Ensure all Creditors are added as "additional insureds" to the Kinsale General Liability Policy and send us proof when that has been completed;

- Send us copies of all insurance applications, statements, submissions, and/or other communications from Villa Chardonnay to either Slade Brown or Kinsale that were used to obtain coverage under the Kinsale Policy;

- Send us the final version (not the draft version) of the 90-day projection;

- Send us copies of Villa Chardonnay's bank records.

Please provide the requested materials by December 29, and let us know as soon as possible any date(s) within the first two weeks of January that the property is available for inspection by the appraiser.

Thank you,
Dylan Noceda



**Dylan A. Noceda**
Admitted in CA

444 W C St, Ste 300
San Diego, CA 92101
600 17th St. Ste 2800 S
Denver, CO 80202
FSL.law | 619.833.7327



IMPORTANT: This message is confidential. It may also be privileged or otherwise protected by work product immunity or other legal rules. If you have received it by mistake, please let us know by e-mail reply and delete it from your system; you may not copy this message or disclose its contents to anyone.

# EXHIBIT "8"

**Wednesday, January 14, 2026 at 1:17:29 PM Pacific Standard Time**

---

**Subject:** Villa Chardonnay - Corporate Books and Records
**Date:** Wednesday, January 7, 2026 at 6:08:43 PM Pacific Standard Time
**From:** Meredith King
**To:** Totaro & Shanahan, LLP
**CC:** Paul J. Leeds

Mr. Totaro:

Following up on Ms. Perez's testimony today, could you please provide our office copies of the items listed below?

Villa Chardonnay's:

(1) corporate records and all amendments thereto, including its articles of incorporation and bylaws;
(2) minutes of all board of directors and shareholder meetings; and
(3) current and historical lists of officers, directors, and shareholders.

I am hopeful these corporate records will be on hand to the extent that they have been provided to the Office of the United States Trustee and ask that, if possible, they be provided tomorrow.

Best,

Meredith



**Meredith King**
Admitted in CA
|  ☐                                     444 W C St, Ste 300
   San Diego, CA 92101
☐ 600 17th St. Ste 2800 S
   Denver, CO 80202
☐ FSL.law | ☐ 619.872.2581

---

 

1 of 2



IMPORTANT: This message is confidential. It may also be privileged or otherwise protected by work product immunity or other legal rules. If you have received it by mistake, please let us know by e-mail reply and delete it from your system; you may not copy this message or disclose its contents to anyone.